# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF KANSAS
### WICHITA DIVISION

In Re

**Pamela R Aikman,**
    Debtor.

**Specialized Loan Servicing, LLC as servicer for Towd Point Master Funding Trust 2018-PM22, U.S. Bank National Association, as Trustee,**
    Movant.

v.

**Pamela R Aikman,**
    Debtor,

and

**J Michael Morris,** Trustee.
    Respondents.

**Case No. 18-12314**

**Chapter 7**

**MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY**

**MOTION WAIVES 30 DAY HEARING**

**Hearing Date: June 13, 2019**
**Hearing time: 9:00 AM**

**Kozeny & McCubbin, LC**
**12400 Olive Blvd., Suite 555**
**St. Louis, MO 63141**
**ksbk@km-law.com**

## MOTION FOR ABANDONMENT AND RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)

Specialized Loan Servicing, LLC as servicer for Towd Point Master Funding Trust 2018-PM22, U.S. Bank National Association, as Trustee ("Movant") hereby moves this Court for abandonment, pursuant to 11 U.S.C. §554 and Fed.R.Bankr.P. 6007(b), and for relief from the automatic stay pursuant to 11 U.S.C. § 362 with respect to certain real property of the Debtor having an address of 319 Valleyview Court, Andover, KS 67002 (the "Property"). In further support of this Motion, Movant respectfully states:

1.    A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on November 29, 2018. The Court has jurisdiction over this

-1-



matter pursuant to 28 U.S.C. Sections 151, 157 and 1334; Fed.R.Bankr.P. 6007(b); and D. Kan. Rule 83.8.5. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2). Venue is proper in this District under 28 U.S.C. Section 1409(a).

2.     The Debtor, Pamela R. Aikman, has executed and delivered that certain promissory note in the original amount of $50,000.00 (the "Note").  A copy of the note is attached hereto as Exhibit 1. Movant is an entity entitled to enforce the Note.

3.     Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor and Co Borrower, Wayne M. Aikman, under the Note and Mortgage with respect to the Loan are secured by the Property.  A copy of the Mortgage is attached hereto as Exhibit 2.

4.     All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain Assignment of Mortgage.  A copy of the Assignment of Mortgage is attached hereto as Exhibit 3.

5.     The statement of intentions calls for the Debtor to surrender the property.

6.     The legal description of the Property is set forth in the Mortgage, a copy of which is attached hereto, and such description is incorporated and made a part hereof by reference.

7.     As of April 16, 2019, the outstanding Obligations are:

-2-



| | |
|---|---|
| Unpaid Principal Balance | $24,172.48 |
| Unpaid, Accrued Interest | $1,274.24 |
| Uncollected Late Charges | $38.02 |
| Mortgage Insurance Premiums | $0.00 |
| Taxes and Insurance Payments on behalf of Debtor(s) | $0.00 |
| Other Costs | $5.37 |
| **Less**: Partial Payments | ($0.00) |
| Minimum Outstanding Obligations | $25,490.11 |

8.     The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Note that have been missed by the Debtor as of April 16, 2019:

| Number of Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 1 | 09/20/2018 | 09/20/2018 | $247.57 | $247.57 |
| 1 | 10/20/2018 | 10/20/2018 | $244.81 | $244.81 |
| 1 | 11/20/2018 | 11/20/2018 | $251.41 | $251.41 |
| 1 | 12/20/2018 | 12/20/2018 | $247.91 | $247.91 |
| 1 | 01/20/2019 | 01/20/2019 | $251.41 | $251.41 |
| 1 | 02/20/2019 | 02/20/2019 | $256.54 | $256.54 |
| 1 | 03/20/2019 | 03/20/2019 | $252.53 | $252.53 |
| Less contractual partial payments: | | | | ($0.00) |
| Total: | | | | $1,752.18 |

9.     The fair market value of the Property is $90,000.00. The basis for such valuation is Schedule A/B of the Debtor`s Schedules.  A copy of Schedule A/B is attached hereto as Exhibit 4.

10.     The address to which payments are to be made for Specialized Loan Servicing, LLC as servicer for Towd Point Master Funding Trust 2018-PM22, U.S. Bank National Association, as Trustee is:

-3-



Specialized Loan Servicing LLC
PO Box 636007
Littleton, CO 80163

11.     The following are all consensual lien holders with respect to the collateral known to Movant:

Quicken Loans
P.O. Box 6577
Carol Stream, IL 60197-6577

12.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to the Movant, is $119,512.11.

13.     Cause exists for relief from the automatic stay for the following reasons:

(a)     Movant`s interest in the Property is not adequately protected.

(b)     Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor has no equity in the Property, and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

(c)     The Movant is entitled to an order deeming the Property abandoned by the Chapter 7 Trustee as an asset of the bankruptcy estate, pursuant to 11 U.S.C. § 554 and Fed.R.Bankr.P. 6007(b).

**WHEREFORE**, Movant prays that this court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

-4-

2. That the real property is abandoned by the Chapter 7 Trustee as an asset of the bankruptcy estate, effective upon entry of this order.

3. That if there is a foreclosure action then the Chapter 7 Trustee will be named as an in rem party, that no ancillary relief such as in the form of a receivership or request for extinguishment of redemption rights will be allowed, and that all redemption rights will vest in the Chapter 7 Trustee.

4. That the Order be binding and effective despite any conversion of the bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

5. That the Property be deemed abandoned by the Chapter 7 Trustee as an asset of the bankruptcy estate effective upon entry of the Court's order.

6. For such other relief as the Court deems proper.

Respectfully submitted,

/s/Dustin Stiles_____
Jonathon B. Burford, #78184
Dustin Stiles, #25152
Attorneys for Movant
12400 Olive Blvd., Suite 555
St. Louis, MO 63141
Phone: (314) 991-0255
Fax:  (314) 567-8019
ksbk@km-law.com

I certify that on the 30th day of April, 2019, a true and correct copy of the Motion for Relief from Automatic Stay was served electronically via CM/ECF upon the following parties:



-5-

Mark J. Lazzo
Attorney for Debtor
3500 N Rock Rd
Building 300
Suite B
Wichita, KS 67226

J Michael Morris
Trustee
301 North Main Suite 1600
Wichita, KS 67202

Office of the US Trustee
U.S. Trustee
301 North Main Suite 1150
Wichita, KS 67202


And delivered via regular U.S. Mail on April 30, 2019 to:

Pamela R Aikman
Debtor
319 Valleyview Ct
Andover, KS 67002

Wayne M. Aikman
Co Borrower
319 Valleyview Ct
Andover, KS 67002

Quicken Loans
Creditor
P.O. Box 6577
Carol Stream, IL 60197-6577


/s/ Shawn Grebe
    Shawn Grebe

-6-



DATE: **February 13, 2007**          EXHIBIT 1
BORROWER: **Pamela R. Aikman**

LOAN #: ▓▓▓▓▓▓
PROPERTY ADDRESS: **319 Valleyview Court**
**Andover, Kansas 67002**

### HOME EQUITY CREDIT LINE AGREEMENT AND
### DISCLOSURE STATEMENT

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you, **Home Loan Center, Inc., dba LendingTree Loans, a California Corporation**
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to **Home Loan Center, Inc., dba LendingTree Loans**
**163 Technology Drive**
**Irvine, CA 92618**

**1. LOANS: DRAW AND REPAYMENT PERIOD**. Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 16.A below.) You will not make any loan before the fourth business day following the signing of this Agreement.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS**. You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least **$250.00**          ; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller machine ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS**. I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number**. I also agree to comply with any agreement between me and the Card Issuer:

A. Account Access. In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call the 800 assistance number which appears on the reverse side of my Card to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full

amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; or (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supersede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

**Special Rule for Card Purchases.**
If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b) The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly, except that my first periodic statement may be generated and mailed to me between thirty and sixty days after I open my Account. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance", my Annual Percentage Rate, the amount of my "Minimum Payment Due", my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, without penalty. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

F. During the Repayment Period, my "Minimum Payment Due" equals 1/180 of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT**. My Credit Limit under this Agreement is $       50,000.00       . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

**6. ANNUAL PERCENTAGE RATE.**
*One box must be checked by Lender.*

☐ A. The initial Daily Periodic Rate is           %. The initial **ANNUAL PERCENTAGE RATE** is           %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be           % and the initial **ANNUAL PERCENTAGE RATE** would be           %. These discounted rates will be in effect from the date of this Agreement until           . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

☒ B. The initial Daily Periodic Rate is       0.0284       % and the initial **ANNUAL PERCENTAGE RATE** is    10.3750   %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last business day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is    2.1250   percentage points.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above       18.0000       % or the maximum rate permitted by state law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGES**. I agree to pay finance charges on my Account as explained below.

A. Periodic **FINANCE CHARGE**.

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES**.

(1) Points **FINANCE CHARGE**.

I agree to pay a Points **FINANCE CHARGE** of $ _____ at the time I sign this Agreement.

_____          $ _____
_____          $ _____
_____          $ _____
_____          $ _____
                                          $ _____

(2) Broker Fee **FINANCE CHARGES**.

I agree to pay Broker Fee **FINANCE CHARGES** of $ _____ at the time I sign this Agreement.

_____          $ _____
_____          $ _____
_____          $ _____
_____          $ _____

(3) Settlement Agent **FINANCE CHARGES**.

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

Closing Fee                               $ _____
_____          $ _____
_____          $ _____
_____          $ _____
_____          $ _____

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below which shall constitute additional indebtedness under this Agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within ten (10) days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $25, whichever is less.

(2) I agree to pay a Return Item Fee of $10 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

Survey                                    $ _____
Appraisal                                 $ _____
Credit Report                             $ _____
Registration Stamp Tax                    $ _____
Recording Fee                             $ _____
Title Search                              $ _____
Title Insurance                           $ _____
Title Guaranty                            $ _____
_____          $ _____
_____          $ _____
_____          $ _____
_____          $ _____
LESS Amounts Paid by Lender               $ _____

**SEE ATTACHED ADDENDUM**

Total Paid by Borrower                    $ _____

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

**9. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at **319 Valleyview Court**

**Andover, Kansas 67002**

(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**10. SECTION INTENTIONALLY OMITTED.**

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

        (1)    the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

        (2)    you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

        (3)    I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

        (4)    government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

        (5)    government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

        (6)    the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached; or

        (7)    the creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supersede your rights described in this paragraph 12.

**13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d) I move out of the Real Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Mortgage;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**14. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

      (1) my promise not to exceed my Credit Limit; and

      (2) my "Important Obligations" listed in the Mortgage.

**15. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**16. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. <u>Termination by Me.</u> I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 16.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B. <u>Termination by You.</u> My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 16.A above.

C. <u>Effect of Termination.</u> Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination.

**17. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

      (1) if the original Index is no longer available, you may change the Index and Margin;

      (2) you may make any change I agree to in writing;

      (3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans and;

      (4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**18. OTHER PROVISIONS.**

A. <u>Third Parties.</u> This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by applicable provisions of Kansas law, including Kan. Stat. Ann. sections 16a-1-101 to 16a-9-102 covering consumer credit transactions, including the interest rate ceilings set forth in such sections.

E. Application of Payments. You may apply payments and proceeds of the Real Property first to accrued and unpaid finance charges and then to principal.

F. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. Waiver of Jury Trial. **I waive my right to a jury trial.**

H. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to**            **Home Loan Center, Inc., dba LendingTree Loans**
**163 Technology Drive**
**Irvine, CA  92618**

L. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 18.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at   **Home Loan Center, Inc., dba LendingTree Loans**
**163 Technology Drive**
**Irvine, CA  92618**
or to such other address as you may designate by written notice to me as provided in this paragraph 18.M.

N. Riders/Addenda. The covenants and agreements of the rider/addendum checked below are incorporated into and supplement and amend the terms of this Agreement.

- [X] Fee Addendum _____
- [ ] _____

**19. MY BILLING RIGHTS. I SHOULD KEEP THIS NOTICE FOR FUTURE USE.**

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You In Case of Errors Or Questions About My Bill.

If I think my bill is wrong, or I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:

My name and account number.

The dollar amount of the suspected error.

I must describe the error and explain, if I can, why I believe there is an error. If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities After You Receive My Written Notice.

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

**NO ORAL AGREEMENTS**: This written agreement is the final expression of the credit agreement between you and me and may not be contradicted by evidence of any prior oral agreement or of any contemporaneous oral agreement between you and me.

**NONSTANDARD TERMS**: The following space contains all nonstandard terms, including all previous oral credit agreements, if any, between you and me.

**AFFIRMATION**: By initialing below you and I affirm that no unwritten prior or contemporaneous oral agreements exist between us.

PRA

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Borrower | Borrower | Lender |

| | |
|---|---|
| _____ | _____ |
| Borrower | Borrower |

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE "AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

**NOTICE TO CONSUMER**

1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT.

2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.

3. YOU MAY PREPAY THE UNPAID BALANCE AT ANY TIME WITHOUT PENALTY.

Borrower: **Pamela R. Aikman**                     2/13/07
                                                      Date

Borrower:                                             Date

Borrower:                                             Date

Borrower:                                             Date

Borrower:                                             Date

Borrower:                                             Date

PAY TO THE ORDER OF

RESIDENTIAL FUNDING COMPANY, LLC

WITHOUT RECOURSE
Home Loan Center Inc. DBA LendingTree Loans

BY: _____

Claudia Cucue
ASST. SECRETARY

PAY TO THE ORDER OF
LaSalle Bank, N.A. as Trustee
WITHOUT RECOURSE
Residential Funding Company, LLC

By: _____
Judy Faber, Vice President

## ADDENDUM TO HOME EQUITY LINE OF CREDIT AGREEMENT AND
## PROMISSORY NOTE (the "Agreement")

This addendum is affixed to and amends and supplements the Home Equity Line of Credit Agreement and Promissory Note (the "Agreement") entered into between you,
**Pamela R. Aikman**

as borrower(s), and **Home Loan Center, Inc., dba LendingTree Loans**                    on the
**13th**           day of   **February**        ,   **2007**      . Capitalized terms used in this Addendum have the same meanings as given to them in the Agreement.

This Section of the Agreement title **REQUESTING A LOAN** is hereby amended by this Addendum to read as follows:

     **REQUESTING A LOAN:**  You request a loan under this plan whenever you:
-        write a check for at least the minimum advance listed above using one of the special checks you have for that purpose.
-        authorize a payment to a third person or account for closing costs or certain other amounts on your behalf in accordance with your disbursement authorization provided to us at or before the time you sign this Agreement.

     A subsequent holder of this Agreement may offer you additional methods of requesting a loan and will advise you of the terms and procedures for such additional methods.

Except for the modifications described above, all terms and conditions of the Agreement remain unchanged and in full force and effect, except that this Addendum shall be no further force and effect if a subsequent holder permits you to request loans in the manners specified in the Agreement without reference to the terms of this Addendum.

_Pamela R. Aikman_          2/13/07
**Pamela R. Aikman**                Date

_____
Date

_____
Date

_____
Date

_____
Date

_____
Date

Form 10241L Rev 10/03

# KANSAS
## UCCC ELECTION ADDENDUM TO NOTE

This Addendum is made this **13** day of **February 2007**, and is incorporated into and shall be deemed to amend and supplement the Note ("Note") of the same date herewith, given by the undersigned ("Borrower") to evidence Borrower's indebtedness to **Home Loan Center, Inc., dba LendingTree Loans**, its successors and assigns ("Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date and covering the property described in the Security Instrument and located at:

**319 Valleyview Court**
**Andover, Kansas 67002**

[Property Address]

Notwithstanding anything to the contrary set forth in the Note, Lender and Borrower hereby acknowledge and agree to the following.

**1. UCCC ELECTION**

Borrower and Lender have elected to have this Note governed by Sections 16a-1-101 through 16a-9-102 of the Kansas Uniform Consumer Credit Code (including the interest rates in section 16a-2-401).

**2. LATE CHARGE FOR OVERDUE PAYMENTS**

Section 6(A), Late Charge for Overdue Payments, is modified to provide that if the Note Holder has not received the full amount of any monthly payment by the end of **Ten** ( **10** ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5** %of my overdue payment of principal and interest, but not more than U.S. $ **25.00** . I will pay this late charge promptly but only once on each late payment.

All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

**NOTICE TO CONSUMER:**
1. Do not sign this agreement before you read it.
2. You are entitled to a copy of this agreement.
3. You may prepay the unpaid balance at any time without penalty.

IN WITNESS WHEREOF, Borrower(s) has executed this Addendum.

_Pamela R. Aikman_ 2/13/07
_____
**Pamela R. Aikman** (Borrower) (Date)

_____
(Borrower) (Date)

_____
(Borrower) (Date)

_____
(Borrower) (Date)

Kansas UCCC Election Addendum to Note
**50404L1**                 Page 1 of 1

DATE: 2/13/2007
BORROWER: Pamela R. Aikman

LOAN#: ▉▉▉▉▉
PROPERTY ADDRESS: 319 Valleyview Court, Andover, Kansas, 67002

## ADDENDUM TO
## HOME EQUITY CREDIT LINE
## AGREEMENT AND DISCLOSURE STATEMENT

| 6.B. Other FINANCE CHARGES | Charges | POC by Borrower | POC by Lender |
|---|---|---|---|
| **(1) Points FINANCE CHARGE.** | | | |
| Loan Origination Fee: | 665.00 | | |
| | | | |
| | | | |
| | | | |
| **Broker Fee FINANCE CHARGE** | | | |
| | | | |
| **Settlement Agent FINANCE CHARGE** | | | |
| Settlement Fee | 100.00 | | |
| | | | |
| | | | |
| **Miscellaneous FINANCE CHARGE** | | | |
| Underwriting Fee: | 400.00 | | |
| Loan Processing Fee: | 325.00 | | |
| | | | |
| | | | |
| Flood Certification: | 10.00 | | |
| | | | |
| | | | |
| Escrow Wire Fee: | 15.00 | | |
| Escrow Courier Fee: | 15.00 | | |
| | | | |
| | | | |

## 7. OTHER CHARGES
### B.

| | Charges | POC by Borrower | POC by Lender |
|---|---|---|---|
| Appraisal Fee: | 110.00 | | |
| | | | |
| Notary Fee: | 90.00 | | |
| Title Insurance (LTSS) | 185.00 | | |
| Recording Fees: | 44.00 | | |
| | | | |
| Tax - Mortgage: | 130.00 | | |
| | | | |
| | | | |
| LendingTree CLO Fee: | | | 575.00 |
| | | | |
| | | | |
| | | | |
| **TOTAL** | 2,089.00 | | 575.00 |

By signing below, I hereby acknowledge receipt of this Addendum to the Home Equity Line Agreement and Disclosure Statement.

_Pamela R. Aikman_ 2/13/07
Borrower  **Pamela R. Aikman**          Date

_____     _____
Borrower                           Date          Borrower                           Date

_____     _____
Borrower                           Date          Borrower                           Date

_____     _____
Borrower                           Date          Borrower                           Date



BUTLER COUNTY, KS
- MARCIA McODY -
REGISTER OF DEEDS
**Book: 2007 Page: 5705**
Receipt #: 37648          Total Fees: $28.00
Mortgage #: 594          Mortgage Amt: $50,000.00
Pages Recorded: 6          Registration Tax: $130.00
Date Recorded: 3/5/2007 11:58:52 AM



RTN: LendingTree Settle.
12735 GranBay Pkwy W.
Bldg 100, Ste 2000
Jacksonville, FL 32258

EXHIBIT 2

After Recording Return To:
Home Loan Center, Inc., dba LendingTree Loans
163 Technology Drive
Irvine, CA 92618

Prepared By: *Denise Hew*
Home Loan Center, Inc., dba LendingTree Loans
163 Technology Drive
Irvine, CA 92618

————————————— [Space Above This Line For Recording Data] —————————————

DOC ID #: ▊▊▊▊

## MORTGAGE
### (Line of Credit)

MIN ▊▊▊▊▊▊▊▊▊▊

    THIS MORTGAGE, dated    February 13 , 2007 , is between   Wayne M. Aikman and
Pamela R. Aikman Husband and Wife, as Joint Tenants With Right of Survivorship

residing at    319 Valleyview Court, Andover, KS 67002

the person or persons signing as "Mortgagor(s)" below and hereinafter referred to as "we" or "us" and
"Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for
Home Loan Center, Inc., dba LendingTree Loans, 163 Technology Drive, Irvine, CA 92618 ,
(hereinafter "you" or "Lender") and Lender's successors and assigns)," with an address at P.O. Box 2026,
Flint, MI 48501-2026, tel. (888) 679-MERS, referred to as the "Mortgagee."

Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in
this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's
successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to,
the right to foreclose and sell the Premises; and to take any action required of Lender including, but not
limited to, releasing or canceling this Mortgage.

    MORTGAGED PREMISES: In consideration of the loan hereinafter described, we hereby mortgage,
grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the
successors and assigns of MERS, with the power of sale, the premises located at:

319 Valleyview Court, Andover
Street, Municipality

| Butler | Kansas - | 67002 - | (the "Premises"). |
|--------|----------|---------|-------------------|
| County | | ZIP | |



...

and further described as:

APN # ▓▓▓▓▓▓▓

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

LOAN: The Mortgage will secure your loan in the principal amount of $ **50,000.00** or so much thereof as may be advanced and readvanced from time to time to
Pamela R. Aikman

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated **February 13, 2007** , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

BORROWER'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

Page 2 of 5    Initials: PRA WMA

and further described as:

APN # ▓▓▓▓▓▓

The Premises includes all buildings and other improvements now or in the future on the Premises and all rights and interests which derive from our ownership, use or possession of the Premises and all appurtenances thereto.

LOAN: The Mortgage will secure your loan in the principal amount of $ **50,000.00** or so much thereof as may be advanced and readvanced from time to time to
Pamela R. Aikman

the Borrower(s) under the Home Equity Credit Line Agreement and Disclosure Statement (the "Note") dated **February 13, 2007** , plus interest and costs, late charges and all other charges related to the loan, all of which sums are repayable according to the Note. This Mortgage will also secure the performance of all of the promises and agreements made by us and each Borrower and Co-Signer in the Note, all of our promises and agreements in this Mortgage, any extensions, renewals, amendments, supplements and other modifications of the Note, and any amounts advanced by you under the terms of the section of this Mortgage entitled "Our Authority To You." Loans under the Note may be made, repaid and remade from time to time in accordance with the terms of the Note and subject to the Credit Limit set forth in the Note.

OWNERSHIP: We are the sole owner(s) of the Premises. We have the legal right to mortgage the Premises to you.

BORROWER'S IMPORTANT OBLIGATIONS:

(a) TAXES: We will pay all real estate taxes, assessments, water charges and sewer rents relating to the Premises when they become due. We will not claim any credit on, or make deduction from, the loan under the Note because we pay these taxes and charges. We will provide you with proof of payment upon request.

(b) MAINTENANCE: We will maintain the building(s) on the Premises in good condition. We will not make major changes in the building(s) except for normal repairs. We will not tear down any of the building(s) on the Premises without first getting your consent. We will not use the Premises illegally. If this Mortgage is on a unit in a condominium or a planned unit development, we shall perform all of our obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development and constituent documents.

(c) INSURANCE: We will keep the building(s) on the Premises insured at all times against loss by fire, flood and any other hazards you may specify. We may choose the insurance company, but our choice is subject to your reasonable approval. The policies must be for at least the amounts and the time periods that you specify. We will deliver to you upon your request the policies or other proof of the insurance. The policies must name you as "mortgagee" and "loss-payee" so that you will receive payment on all insurance claims, to the extent of your interest under this Mortgage, before we do. The insurance policies must also provide that you be given not less than 10 days prior written notice of any cancellation or reduction in coverage, for any reason. Upon request, we shall deliver the policies, certificates or other evidence of insurance to you. In the event of loss or damage to the Premises, we will immediately notify you in writing and file a proof of loss with the insurer. You may file a proof of loss on our behalf if we fail or refuse to do so. You may also sign our name to any check, draft or other order for the payment of insurance proceeds in the event of loss or damage to the Premises. If you receive payment of a claim, you will have the right to choose to use the money either to repair the Premises or to reduce the amount owing on the Note.

(d) CONDEMNATION: We assign to you the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Premises, or part thereof, or for conveyance in lieu of condemnation, all of which shall be paid to you, subject to the terms of any Prior Mortgage.

(e) SECURITY INTEREST: We will join with you in signing and filing documents and, at our expense, in doing whatever you believe is necessary to perfect and continue the perfection of your lien and security interest in the Premises.

(f) OUR AUTHORITY TO YOU: If we fail to perform our obligations under this Mortgage, you may, if you choose, perform our obligations and pay such costs and expenses. You will add the amounts you advance to the sums owing on the Note, on which you will charge interest at the interest rate set forth in the Note. If, for example, we fail to honor our promises to maintain insurance in effect, or to pay filing fees, taxes or the costs necessary to keep the Premises in good condition and repair or to perform any of our other agreements with you, you may, if you choose, advance any sums to satisfy any of our agreements with you and charge us interest on such advances at the interest rate set forth in the Note. This Mortgage secures all such advances. Your payments on our behalf will not cure our failure to perform our promises in this Mortgage. Any replacement insurance that you obtain to cover loss or damages to the Premises may be limited to the amount owing on the Note plus the amount of any Prior Mortgages.

(g) PRIOR MORTGAGE: If the provisions of this paragraph are completed, this Mortgage is subject and subordinate to a prior mortgage dated     September 30, 2005     and given by us to **FIRST HORIZON HOME LOAN** as mortgagee, in the original amount of $      116,518.00      (the "Prior Mortgage"). We shall not increase, amend or modify the Prior Mortgage without your prior written consent and shall upon receipt of any written notice from the holder of the Prior Mortgage promptly deliver a copy of such notice to you. We shall pay and perform all of our obligations under the Prior Mortgage as and when required under the Prior Mortgage.

(h) HAZARDOUS SUBSTANCES: We shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Premises. We shall not do, nor allow anyone else to do, anything affecting the Premises that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Premises of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Premises. As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Premises are located that relate to health, safety or environmental protection.

(i) SALE OF PREMISES: We will not sell, transfer ownership of, mortgage or otherwise dispose of our interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises without your prior written consent.

(j) INSPECTION: We will permit you to inspect the Premises at any reasonable time.

NO LOSS OF RIGHTS: The Note and this Mortgage may be negotiated or assigned by you without releasing us or the Premises. You may add or release any person or property obligated under the Note and this Mortgage without losing your rights in the Premises.

DEFAULT: Except as may be prohibited by applicable law, and subject to any advance notice and cure period if required by applicable law, if any event or condition described in Paragraph 12.A. of the Note occurs, you may foreclose upon this Mortgage. This means that you may arrange for the Premises to be sold, as provided by law, in order to pay off what we owe on the Note and under this Mortgage. If the money you receive from the sale is not enough to pay off what we owe you, we will still owe you the difference which you may seek to collect from us in accordance with applicable law. In addition, you may, in accordance with applicable law, (i) enter on and take possession of the Premises; (ii) collect the rental payments, including over-due rental payments, directly from tenants; (iii) manage the Premises; and (iv) sign, cancel and change leases. We agree that the interest rate set forth in the Note will continue before and after a default, entry of a judgment and foreclosure. In addition, you shall be entitled to collect all reasonable fees and costs actually incurred by you in proceeding to foreclosure, including, but not limited to, reasonable attorneys fees and costs of documentary evidence, abstracts and title reports; however, such collection costs: (1) may not include costs that were incurred by a salaried employee of you or of your assignee; (2) may not include the recovery of both attorney fees and collection agency fees; and (3) shall not be in excess of fifteen (15%) percent of the unpaid debt after default.

ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER: As additional security, we assign to you the rents of the Premises. You or a receiver appointed by the courts shall be entitled to enter upon, take possession of and manage the Premises and collect the rents of the Premises including those past due.

Initials: PQR  WMA

Case 18-12314    Doc# 29    Filed 04/30/19    Page 25 of 32

WAIVERS: To the extent permitted by applicable law, we waive and release any error or defects in proceedings to enforce this Mortgage and hereby waive the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale.

BINDING EFFECT: Each of us shall be fully responsible for all of the promises and agreements in this Mortgage. Until the Note has been paid in full and your obligation to make further advances under the Note has been terminated, the provisions of this Mortgage will be binding on us, our legal representatives, our heirs and all future owners of the Premises. This Mortgage is for your benefit and for the benefit of anyone to whom you may assign it. Upon payment in full of all amounts owing to you under the Note and this Mortgage, and provided any obligation to make further advances under the Note has terminated, this Mortgage and your rights in the Premises shall end.

NOTICE: Except for any notice required under applicable law to be given in another manner, (a) any notice to us provided for in this Mortgage shall be given by delivering it or by mailing such notice by regular first class mail addressed to us at the last address appearing in your records or at such other address as we may designate by notice to you as provided herein, and (b) any notice to you shall be given by certified mail, return receipt requested, to your address at

**163 Technology Drive, Irvine, CA  92618**

or to such other address as you may designate by notice to us. Any notice provided for in this Mortgage shall be deemed to have been given to us or you when given in the manner designated herein.

RELEASE: Upon payment of all sums secured by this Mortgage and provided your obligation to make further advances under the Note has terminated, you shall discharge this Mortgage without charge to us.

GENERAL: You can waive or delay enforcing any of your rights under this Mortgage without losing them. Any waiver by you of any provisions of this Mortgage will not be a waiver of that or any other provision on any other occasion.

THIS MORTGAGE has been signed by each of us under seal on the date first above written.

WITNESS:

_____      _____ (SEAL)
                   Mortgagor:    Pamela R. Aikman

_____      _____ (SEAL)
                   Mortgagor:    Wayne M. Aikman

_____      _____ (SEAL)
                   Mortgagor:

_____      _____ (SEAL)
                   Mortgagor:

Case 18-12314    Doc# 29    Filed 04/30/19    Page 26 of 32

STATE OF KANSAS,          Butler          County ss:

BE IT REMEMBERED, that on this _13th_ day of _February_, _2007_, before me, the undersigned, a Notary Public in and for the County and State aforesaid, personally appeared Pamela R. Aikman, Wayne M. Aikman

_____, to me personally known to be the same person(s) who executed the above and foregoing instrument of writing, and duly acknowledged the execution of same.

IN WITNESS WHEREOF, I have hereunto set my hand and Notarial Seal on the day and year last above written.

My Commission Expires:

_8-12-07_

_Carolyn S. West_
Notary Public

**Carolyn S. West**

Type Name

CAROLYN S. WEST
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Exp. 8-12-07

**Order Number:** █████████

**Borrower's Name:** AIKMAN

## Exhibit A

**THE FOLLOWING DESCRIBED PREMISES, TO WIT:**

LOT NUMBERED 24, IN BLOCK NUMBERED 3, COUNTRY SIDE SECOND
ADDITION TO THE CITY OF ANDOVER, IN BUTLER COUNTY, KANSAS.



BUTLER COUNTY, KS
REGISTER OF DEEDS
Marcia McCoy

**Book: 2019 Page: 1327**

Receipt #: 133845       Recording Fee: $28.00

Pages Recorded: 1 of 3

**Date Recorded: 2/26/2019 2:04:28 PM**

[ELECTRONICALLY FILED]

EXHIBIT 3

Prepared by and return to:

**COMPUTERSHARE TITLE SERVICES**
**c/o VISIONET SYSTEMS INC.**
**183 INDUSTRY DRIVE**
**PITTSBURGH, PA 15275**

Mail tax statements to:

**SPECIALIZED LOAN SERVICING LLC**
**8742 LUCENT BLVD. SUITE 300**
**HIGHLANDS RANCH, CO 80129**

### Assignment of Mortgage

ORDER #
MIN #       MERS PHONE #: 1-888-679-6377

FOR VALUE RECEIVED, the undersigned **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME LOAN CENTER, INC., DBA LENDINGTREE LOANS, ITS SUCCESSORS AND ASSIGNS** (herein "Assignor"), does hereby grant, assign, transfer, and convey unto **TOWD POINT MASTER FUNDING TRUST 2018-PM22, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE** (herein "Assignee"), whose address is **C/O Specialized Loan Servicing LLC, 8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129-2386**, all of its right, title, and interest in that certain Mortgage dated **February 13, 2007**, made and executed by **WAYNE M. AIKMAN AND PAMELA R. AIKMAN HUSBAND AND WIFE, AS JOINT TENANTS WITH RIGHT OF SURVIVORSHIP**, to and in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME LOAN CENTER, INC., DBA LENDINGTREE LOANS, ITS SUCCESSORS AND ASSIGNS** in the amount of **$50,000.00**, recorded on **03/05/2007** in Book/Volume: **2007**, Page: **5705** of the Official Records of **BUTLER** County, Kansas, and upon property with the address of **319 VALLEYVIEW COURT, ANDOVER, KANSAS 67002** and the legal description attached hereto as Exhibit A.

Dated: 2/22/19

> **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME LOAN CENTER, INC., DBA LENDINGTREE LOANS, ITS SUCCESSORS AND ASSIGNS**
>
> **SCOTT SLAGLE**
> **ASSISTANT VICE PRESIDENT**

COMMONWEALTH of **PENNSYLVANIA** )

                                      )

COUNTY of **ALLEGHENY** )

On this, the ___ day of _____, 20__, before me a notary public, the undersigned officer, personally appeared SCOTT SLAGLE, ASSISTANT VICE PRESIDENT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME LOAN CENTER, INC., DBA LENDINGTREE LOANS, ITS SUCCESSORS AND ASSIGNS, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that s/he executed the same in his/her authorized capacity for the entity on behalf of which s/he acted and for the purposes therein contained. In witness hereof, I hereunto set my hand and official seal.

{*Insert Notary Seal*}

Printed Name: **Pamuela L Wood**
Notary Public
My Commission Expires: **02/07/2021**

Commonwealth of Pennsylvania - Notary Seal
PAMUELA L WOOD - Notary Public
Allegheny County
My Commission Expires Feb 7, 2021
Commission Number 1305462

## EXHIBIT A - LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED PREMISES, TO WIT:

LOT NUMBERED 24, IN BLOCK NUMBERED 3, COUNTRY SIDE SECOND
ADDITION TO THE CITY OF ANDOVER, IN BUTLER COUNTY, KANSAS.

| | | | |
|---|---|---|---|
| Debtor 1 | **Pamela R Aikman** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | | |
| | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF KANSAS, WICHITA DIVISION | | |
| Case number | _____ | | |

☐ Check if this is an amended filing

Official Form 106A/B       EXHIBIT 4

# Schedule A/B: Property       12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.

   ■ Yes. Where is the property?

1.1

**319 Valleyview Ct**
Street address, if available, or other description

| | | |
|---|---|---|
| **Andover** | **KS** | **67002-9650** |
| City | State | ZIP Code |

County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Home**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $90,000.00 | $90,000.00 |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.....................................................................=>**

$90,000.00

**Part 2:** Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases*.

Software Copyright (c) 2018 CINGroup - www.cincompass.com